**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Althea Graham, | Case No. 9:23-5934-RMG |
| Plaintiff, | |
| v. | |
| | **ORDER AND OPINION** |
| Patricia Atanasio and Beaufort Memorial Hospital, | |
| Defendants. | |

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Dkt. No. 49) recommending that Defendants' motion for summary judgment (Dkt. No. 36) be granted. For the reasons stated below, the Court adopts the R&R as the order of the Court and grants Defendants' motion.

## I.     Background

Plaintiff is "a Black American originally from Jamaica" who alleged discrimination based on race against her former employer, Beaufort Memorial Hospital ("BMH") and one of its employees, Patricia Atanasio. (Dkt. No. 49 at 2, 13). "Plaintiff alleges nine causes of action in her Amended Complaint: (1) a claim against BMH for race or color discrimination in violation of Title VII; (2) a claim against BMH for retaliation in violation of Title VII; (3) a claim against BMH for hostile work environment in violation of Title VII; (4) a claim against both Defendants for race discrimination in violation of 42 U.S.C. § 1981; (5) a claim against both Defendants for retaliation in violation of § 1981; (6) a claim against both Defendants for hostile work environment in violation of § 1981; (7) a claim against BMH pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's substantive and procedural due process rights; (8) a state-law claim against both

1

Defendants for defamation; and (9) a state-law claim against both Defendants for intentional infliction of emotional distress ('IIED')." (*Id.* at 13-14); (*Id.* at 14) (noting that Plaintiff abandoned her defamation claim in full and her IIED claim against BMH in response to Defendants' motion).

Defendants moved for summary judgement and Plaintiff filed a response in opposition. (Dkt. No. 36); (Dkt. No. 40).

The Magistrate Judge filed an R&R recommending that the Court grant Defendants' motion in full. (Dkt. No. 49).  Plaintiff filed objections to the R&R. (Dkt. No. 50). Defendant replied to Plaintiff's objections. (Dkt. No. 51).

Defendants' motion is fully briefed and ripe for disposition.

## II.  Legal Standards

### A.  Magistrate's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### B.  Summary Judgement

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together

2

with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

III.   **Discussion**

After a de novo review of the record, the Court finds that the Magistrate Judge ably summarized the factual and legal issues in this matter and correctly concluded that Defendants' motion should be granted.

As the R&R described, Plaintiff worked in the Medical Staff Services Department.[1]  She was a Credentialing Specialist and reported directly to Medical Staff Services Coordinator, Defendant Atanasio. (Dkt. No. 49 at 2-3).  Atanasio, in turn, reported to Dr. Kurt Gambla. (*Id.*).

---

[1] In her objections, Plaintiff takes no issue with the R&R's factual summary.  (Dkt. No. 49 at 1-12); *see* (Dkt. No. 50).  Rather, Plaintiff takes issues with the R&R's treatment of certain "evidence" she purportedly submitted or the R&R's application of the law. *See, e.g.*, (Dkt. No. 50 at 4) (arguing R&R improperly concluded Plaintiff failed to produce evidence "showing that Defendants' reasons for the suspension and termination were inconsistent over time, false, or based on mistakes of fact").

The crux of the R&R and Plaintiff's objections focus on events that occurred on August 3 and 4, 2022.

On August 3, 2022, Plaintiff told Atanasio that Plaintiff needed to go to Bluffton to have a provider sign enrollment forms for insurance. ECF No. 36-12 at 2, Atanasio Statement; see ECF No. 40-6, Atanasio Dep. at 60:3–62:14 (testifying that the statement could be relied upon as accurate). Atanasio told Plaintiff that she needed to scan those documents and email them to the practice manager or provider to have them signed. ECF No. 36-12 at 2. Plaintiff responded that she did not feel comfortable sending the documents through the BMH email system because it was not secure, that the only secure email address was the BPP Credentialing email address, and that if Atanasio wanted to send it via her own email she could, but Plaintiff would not send it via email. Id. Atanasio explained that the BPP Credentialing email address was under the Outlook "umbrella" and that if Plaintiff felt more comfortable using that email, she could send the documents through that email. Id. Atanasio also told Plaintiff that she would talk to IT to confirm that the email is secure. Id.; ECF No. 40-6, Atanasio Dep. at 76:14–77:7.

. . .

Atanasio told Plaintiff to email the documents and, if she had any problems, to let Atanasio know, and Atanasio would handle it from there. Id. Later that afternoon, Atanasio spoke to two people in IT, including the head of the department, and confirmed that it was okay to send the provider documents within the organization using BMH email. Id.; ECF No. 40-6, Atanasio Dep. at 77:7–78:1.

The next morning, on August 4, 2022, Plaintiff reminded Atanasio that Plaintiff needed to go and get signatures for provider enrollment. ECF No. 36-12 at 2. Atanasio responded that she had confirmed with IT that it was fine to send those documents through Plaintiff's BMH email, and she told Plaintiff to email the documents to the practice manager, copying Atanasio so that she could follow up while Plaintiff was on vacation. Id. Plaintiff told Atanasio that she felt "really uncomfortable sending a provider PII via email" and that the document needed a wet signature. ECF No. 40-1, Pl. Dep. at 71:10–22. Plaintiff said that Atanasio could email the documents herself or otherwise send the directive to Plaintiff in writing, but Atanasio responded that this was Plaintiff's division of responsibility, and she never sent the directive in writing. Id. at 71:25–72:15; ECF No. 36-12 at 2; ECF No. 40-6, Atanasio Dep. at 82:12–83:21. . . .

Around noon, Atanasio saw Plaintiff speaking to an administrative assistant in a different office; Plaintiff told Atanasio that she was there to FedEx the paperwork to the provider. ECF No. 40-5, SCDEW Hrg. Tr. at 30:15–31:7. In front of the administrative assistant, Atanasio told Plaintiff not to send the documents via FedEx because it was too expensive, and Plaintiff responded that it was not their

money. Id. Atanasio again told Plaintiff to email the documents. Id. Plaintiff
ultimately sent the documents via interoffice mail. Id. at 56:7–23.

(*Id.* at 10-11); Plaintiff Objections, (Dkt. No. 50) (not contesting above factual recitation).

Plaintiff was suspended and put under investigation around August 5, 2022. (Dkt. No. 49
at 11).  Plaintiff then filed a complaint against Atanasio on August 15, 2022, alleging retaliation
and racial discrimination. *See* (*id.* at 11-12).

On August 25, 2022, HR internally recommended terminating Plaintiff's employment for
(1) working remotely in July while out sick without authorization and after being told not to do so;
(2) inability to follow the direction of her supervisors; and (3) inability to maintain interpersonal
relationships to successfully perform her job duties and work with the med staff team and her
supervisor. (Dkt. No. 36-2 at 2).

BHL terminated Plaintiff effective the same day, August 25, 2022.  The letter to Plaintiff
stated she was terminated "after failure to follow instructions from your supervisor, Patricia
Atanasio and multiple inappropriate disruptions." (Dkt. No. 36-17 at 2).

The Court begins with the R&R's recommendation that Plaintiff's Counts I and IV be
dismissed, Race Discrimination under Title VII and § 1981. Applying the *McDonnell Douglas*
burden shifting framework, the R&R concluded Plaintiff could not show evidence of pretext. (Dkt.
No. 49 at 20-24).

Plaintiff objects to this finding. (Dkt. No. 50 at 4-10). Plaintiff contends that Defendants'
reasons for terminating Plaintiff have shifted over time and were false.

The Court overrules Plaintiff's objections and adopts the R&R as to these claims.  As noted
above, Defendants' reasons for terminating Plaintiff didn't change over time—nor could they have
given they were formulated and then told to Plaintiff on August 25, 2022.  Plaintiff was terminated

5

for failing to follow her supervisor's instructions—a fact she does not dispute. *See, e.g.*, (Dkt. No. 50 at 6-7) (admitting Plaintiff disobeyed her supervisor by sending documents via interoffice mail but arguing her actions were, in her opinion, justified).

And Plaintiff cannot show that the reason for her termination was false. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' ") (quoting *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir.1998)). In sum, except for conclusory argumentation, Plaintiff submits no evidence that her insubordination was not the "real reason" for her termination. *See id.* ("But instead of producing evidence that shows Price's assessment of her performance was dishonest or not the real reason for her termination— as the law requires—Hawkins disputes the merits of Price's evaluations."). Plaintiff's arguments do not suffice. *Id.* ("[W]e have repeatedly held that in a wrongful discharge action '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.' ").

Moving to Plaintiff's Retaliation Claims, Counts II and V, the Magistrate Judge likewise recommended granting summary judgment because Plaintiff could not show the reasons proffered for her termination were pretextual. Plaintiff objected to this finding for the identical reasons already noted above. (Dkt. No. 50 at 4-10). And for the same reasons already articulated, the Court adopts the R&R on this point and grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims.

Next, the Magistrate Judge recommended granting summary judgment on Plaintiff's *Monell* claim, Count VII, because she had not alleged that an "official policy or custom" harmed her. (Dkt. No. 49 at 15-16) (noting Plaintiff argued that Dr. Gambla and Atanasio failed to adhere

to BMH's policy of reporting claims to HR but that *Monell* "permits suits against a municipality for a federal constitutional violation *only* when the municipality undertook the allegedly unconstitutional action *pursuant* to an 'official policy' or 'custom,' not in violation of such official policy or custom"). Plaintiff objects to the R&R's recommendation citing *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529 (4th Cir. 2022). (Dkt. No. 50 at 11-15).

       The Court overrules Plaintiff's objection on this point and adopts the R&R as to Plaintiff's *Monell* claim. First, and most fundamentally, Plaintiff does not show with citation to record evidence that BMH undertook unconstitutional action pursuant to an official policy or custom. For this reason alone, her objections are flawed. Second, as Defendants rightly note, *Starbuck* observed that a policy or custom "can arise" "through the decisions of a person with final policymaking authority." *Starbuck*, 28 F.4th at 533. And, on this point, Plaintiff's objections cite no evidence to show Dr. Gambla had the "final policymaking authority" to change HR's policies in a way that, in turn, violated Plaintiff's rights. (Dkt. No. 51 at 4-5); *see also* (Dkt. No. 50 at 13) (objecting that Gambla failed to adhere to BMH's policies and citing no evidence Gabla had the authority to change them—arguing simply that "Lawton testified that persons in Gambla['s] position *should* report these claims to Human resources") (emphasis added). Last, to the extent Plaintiff raises "failure to train" issues, the objection is unavailing. In addition to the fact that failing to train an employee is not a "policy," failure to train is a separate claim that Plaintiff never pled. *See Albright v. Berkeley Cnty. Sheriff's Off.*, No. 2:24-CV-03260-RMG-MGB, 2024 WL 4186085, at *6 (D.S.C. July 10, 2024), *report and recommendation* adopted, No. 2:24-CV-03260-RMG, 2024 WL 3633654 (D.S.C. Aug. 1, 2024) ("To impose supervisory liability under § 1983 for failure to train subordinates, a plaintiff must plead that: (1) the subordinates actually violated the plaintiff's

constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights."); (Dkt. No. 18 at 13) (alleging that BMH violated Plaintiff's rights because her supervisor "intentionally failed to address Plaintniff's complaints regarding race discrimination and retaliation").

In sum, the Court adopts the R&R as to Plaintiff's *Monell* claim.

Next, as to Plaintiff's Hostile Work Environment Claims, Counts III and VI, the Magistrate Judge recommended granting Defendants' motion because Plaintiff could not show any unwelcome conduct was based on Plaintiff's race or that such conduct was severe and pervasive. (Dkt. No. 49 at 29-32). Plaintiff objects to these findings but makes no specific argument based on evidence in the record. *See, e.g.*, (Dkt. No. 50 at 15-16) (claiming without explaining that the R&R "delves. . . into determinations of credibility" and concluding it "is a jury question as to whether" a hostile work environment existed).

The Court overrules Plaintiff's objections and adopts the R&R on this point. Looking, for example, to just the third prong of Plaintiff's hostile work environment claim, it is clear Plaintiff has not met her burden. "The third element of a hostile environment claim requires that the offending conduct be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 331 (4th Cir. 2018). This element has both a subjective and objective component, i.e., the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment. *Id.* "In assessing whether harassment is objectively abusive, courts must examine the totality of the circumstances, including 'the frequency of the discriminatory conduct;

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.*

The Fourth Circuit "has . . . recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (citations omitted).

Even viewed in a light most favorable to her, the evidence Plaintiff adduced shows nothing more than actions that *Sunbelt Rentals* held do not rise to a hostile work environment. *See* (Dkt. No. 49 at 30-31) (noting Plaintiff testified in general terms that Atanasio bullied her and treated her unfairly but noting Plaintiff had "not produced evidence that Atanasio's conduct was humiliating or physically threatening, nor has she shown that Atanasio ever used racially derogatory or offensive language"); *see* (Dkt. No. 50 at 15-16) (objecting to the R&R in general terms but citing no record evidence to demonstrate why its analysis was wrong).

Last, as to Plaintiff's IIED claim, the R&R recommend granting Defendants summary judgment because Plaintiff had not established the kind of "extreme and outrageous conduct" South Carolina law requires. (Dkt. No. 49 at 34-35) (further noting Plaintiff had not produced evidence of suffering emotional distress that was so severe that no reasonable person could be expected to endure it).

9

Plaintiff objects to this finding, (Dkt. No. 50 at 16-17), arguing that "Atanasio bullied her, targeted her, and assigned her an overwhelming amount of work." Plaintiff then concludes that she has met her burden to send the claim to the jury.

The Court overrules Plaintiff's objections and adopts the R&R on this point. As noted above, even read in a light most favorable to her, while Plaintiff has potentially established rude treatment by a coworker, she has not established, for example, "conduct . . . so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' [which] must be regarded as 'atrocious, and utterly intolerable in a civilized community.' " *Argoe v. Three Rivers Behavioral Center and Psychiatric Solutions*, 697 S.E.2d 551, 55 (S.C. 2010); *see, e.g.*, *Shipman v. Glenn*, 443 S.E.2d 921, 922-23 (Ct. App. S.C. 1994) (affirming summary judgment upon finding that, while plaintiff's supervisor's conduct was "callous and offensive" when he ridiculed plaintiff for her speech impediment and "verbally abused" and "threatened" her, conduct could not form the basis of an IIED claim).

### Conclusion

For the reasons set forth above, the Court **ADOPTS** the R&R (Dkt. No. 49) as the Order of the Court and **GRANTS** Defendants' motion for summary judgment (Dkt. No. 36).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 16, 2026
Charleston, South Carolina

10